[No. B125182. Second Dist., Div. Seven. May 26, 2000.]

PETER BERMAN, Plaintiff and Respondent, v.
HEALTH NET et al., Defendants and Appellants.

**COUNSEL**

Ginsburg, Stephan, Oringher & Richman, Gordon E. Bosserman, Todd C. Theodora; Greines, Martin, Stein & Richland, Robert A. Olson and Peter O. Israel for Defendants and Appellants.

Shernoff, Bidart, Darras & Dillion, Michael J. Bidart and Sharon J. Arkin for Plaintiff and Respondent.

**OPINION**

**JOHNSON, J.**—Defendants and appellants Health Net and Health Systems International, Inc. (collectively, Health Net), appeal from an order of the trial court denying their petition to compel arbitration of claims by plaintiff and respondent Peter Berman in connection with Health Net's handling of health care benefits for his late wife, Renee. Health Net argues the discovery it conducted prior to filing its motion to compel arbitration was not enough, in the absence of any other factor, to establish prejudice to the Bermans, and thus was insufficient to support a finding it waived its right to compel arbitration. We disagree and find substantial evidence supports the trial court's implied finding of prejudice, and its consequent finding of waiver by Health Net. We therefore affirm the judgment based on *Davis v. Continental Airlines, Inc.* (1997) 59 Cal.App.4th 205 [69 Cal.Rptr.2d 79].

### FACTUAL AND PROCEDURAL BACKGROUND

Renee Berman, now deceased, was diagnosed with colon cancer in June 1992. She had surgery and chemotherapy in July, receiving medical care under her husband Peter's insurance, obtained through his employment as a deputy district attorney in Los Angeles County. In the fall of 1992, the Bermans' health insurance coverage was changed when Los Angeles County changed the companies with which it contracted to provide health care for its

employees. Peter chose a medical plan offered through Health Net, and signed an enrollment form which included his agreement, by enrolling in a medical plan, "to have any dispute decided by arbitration *in lieu of a jury or court trial.*" (Italics in original.) The plan document contained a clause requiring arbitration of "any dispute or controversy concerning the construction, interpretation, performance or breach of this Evidence of Coverage," except for claims of medical malpractice.

Renee's cancer spread, and in 1996 the Bermans filed their first amended complaint against Health Net, Associated Physicians of St. John's (APSJ), and a number of individual doctors. The first amended complaint alleged many difficulties getting Health Net to approve appropriate treatments, and asserted causes of action against Health Net for breach of the duty of good faith and fair dealing, breach of contract, breach of fiduciary duty, negligent and intentional infliction of emotional distress, and unfair competition under section 17200 of the Business and Professions Code (in the last case, seeking equitable and injunctive relief on behalf of the general public).

Health Net filed a demurrer to the complaint on May 3, 1996. Beginning on May 8, 1996, Health Net served extensive discovery requests on the Bermans, as well as third party subpoenas for Renee's medical records. On May 9, 1996, and May 13, 1996, respectively, counsel for Health Net and the Bermans signed a stipulation confirming a telephone conversation between counsel, whereby Health Net "shall not be accused of having waived or be deemed to have waived any right to seek an order compelling binding arbitration . . ." by reason of "the filing of any motion or pleading challenging the sufficiency" of the complaint, and providing it would have 30 days after the date on which its answer was due to seek an order compelling arbitration. The Bermans served discovery responses in July 1996, and also served Health Net with their own discovery requests.

After two demurrers and subsequent amendments to the complaint, Health Net answered the third amended complaint on October 22, 1996. On November 12, 1996, Health Net filed a petition to compel arbitration. The petition was ultimately denied on the ground there existed a risk of inconsistent rulings because the Bermans' claims against the individual physician defendants were not arbitrable. Health Net appealed from the denial. In the fall of 1997, the Bermans settled all claims against the non-Health Net defendants. Because there no longer existed a risk of inconsistent rulings, Health Net's appeal was rendered moot and was dismissed on January 23, 1998, pursuant to Health Net's request.

On April 20, 1998, Health Net again petitioned to compel arbitration of the Bermans' claims, based on the changed circumstance there would no

longer be any risk of conflicting rulings since all other defendants had been dismissed. The Bermans opposed the petition and argued, inter alia, Health Net had waived the right to compel arbitration by engaging in substantial discovery. On May 28, 1998, the court denied Health Net's petition, citing *Davis v. Continental Airlines, Inc., supra*, 59 Cal.App.4th 205 (*Davis*), and agreeing Health Net had waived its right to arbitration by engaging in discovery.[1] Health Net filed a motion for reconsideration, offering additional evidence on the waiver issue. The motion was denied on July 15, 1998. Renee Berman died on July 24, 1998. Health Net filed its notice of appeal on August 12, 1998.[2]

## DISCUSSION

### I. *The Trial Court Properly Found Health Net Waived Its Right to Compel Arbitration, Based on a Finding of Prejudice to the Bermans.*

#### A. *The Trial Court's Finding of Waiver Must Be Affirmed If Supported by Substantial Evidence.*

While in general arbitration is a highly favored means of settling disputes (*Doers v. Golden Gate Bridge etc. Dist.* (1979) 23 Cal.3d 180, 189 (*Doers*) [151 Cal.Rptr. 837, 588 P.2d 1261]), it is beyond dispute a trial court may deny a petition to compel arbitration if it finds the moving party has waived that right. (Code Civ. Proc., § 1281.2, subd. (a); *Davis, supra,* 59 Cal.App.4th 205, 211.)

"[T]he question of waiver is one of fact, and an appellate court's function is to review a trial court's findings regarding waiver to determine whether these are supported by substantial evidence." (*Engalla v. Permanente Medical Group, Inc.* (1997) 15 Cal.4th 951, 983 [64 Cal.Rptr.2d 843, 938 P.2d 903].) "The appellate court may not reverse the trial court's finding of waiver unless the record as a matter of law compels finding nonwaiver. [Citations.]" (*Davis, supra,* 59 Cal.App.4th 205, 211.) "There is no single test for waiver of the right to compel arbitration, but waiver may be found where the party seeking arbitration has (1) previously taken steps inconsistent with an intent to invoke arbitration, (2) unreasonably delayed in seeking arbitration, or (3) acted in bad faith or with willful misconduct. [Citations.]" (*Id.* at pp. 211-212.) While engaging in litigation of the matter may be

---

[1] The court found "no merit to the other allegations raised" in the Bermans' opposition to the petition to compel arbitration.

[2] The appeal is timely, as no notice of entry of the May 28, 1998 order was filed or served. While the Bermans' brief was filed late and initially rejected by this court, this court on its own motion reconsidered that rejection and permitted filing of the Bermans' brief and a reply brief by Health Net.

inconsistent with an intent to invoke arbitration, "the party who seeks to establish waiver must show that some prejudice has resulted from the other party's delay in seeking arbitration." (*Id.* at p. 212.)

█ In this case, the trial court reviewed the discovery conducted by the parties and made a finding (albeit implied rather than explicit) the Bermans *had* been prejudiced by Health Net's conduct of extensive discovery. This implied finding of prejudice is supported by substantial evidence.[3] Accordingly, we affirm the trial court's finding of waiver.

B. *The Trial Court Examined the Discovery Conducted by the Parties and Concluded the Bermans Disclosed Substantial Information About Their Case.*

In opposing Health Net's second petition to compel arbitration, the Bermans argued Health Net waived its right to arbitration by engaging in substantial discovery. In support of this argument they offered a declaration from counsel enclosing copies of the discovery served by Health Net on the Bermans, and the Bermans' responses. This material included demands for production of documents in 103 categories, several sets of special interrogatories, form interrogatories, notices of deposition (subsequently postponed) and subpoenas for medical records. The Bermans argued Health Net "would not have been able to obtain discovery in the arbitration proceeding," and thus waived its right to compel arbitration by engaging in "extensive, significant and substantive discovery. . . ."[4]

---

[3] Health Net contends the well-established "substantial evidence" standard does not apply in this case because the trial court improperly misallocated the burden of proof on Health Net's petition to compel arbitration. Health Net points to an exchange with the court, in which the court said: "But who should bear the burden? It is Health Net's documents which demand arbitration. It is Health Net that is now petitioning for arbitration. It is also Health Net that went forward and engaged in discovery." When this statement is read in context, it is far from clear the trial court was talking about the ultimate burden of proof on the waiver issue. To the contrary, it was responding to arguments from Health Net about the stipulation, and the fact the Bermans had not asserted a claim of waiver in connection with earlier motions by Health Net to compel arbitration. The court may well have meant the Bermans had no obligation to assert its claim earlier. In any event, the fact is Health Net did not contradict the evidence presented of extensive discovery going "to the heart" of the case, which would not be available in arbitration. The trial court could have reasonably concluded this constituted substantial, and uncontradicted, evidence of waiver and prejudice. We find no flaw in the trial court's ruling.

[4] In opposing Health Net's second petition to compel arbitration, the Bermans quoted the following passage from *Davis, supra,* 59 Cal.App.4th 205, 213: "Although defendants here raised the arbitration/grievance issue, among many others, in their answers to plaintiff's complaint, they did nothing to bring about arbitration for approximately six months. In the meantime they used court discovery procedures to obtain 1,600 pages of documents from plaintiff in 86 categories and to take plaintiff's 2-day, 410-page videotaped deposition. The

In its reply memorandum in support of the petition to compel arbitration Health Net submitted no evidence of any prejudice (or lack thereof) relating to its conduct of discovery. Instead, it argued Berman's counsel had stipulated there would be no waiver of Health Net's right to seek arbitration, as long as it did so within 30 days of filing its answer, and thus the discovery was "properly conducted pursuant to that stipulation."

At the hearing, the trial court reviewed the written stipulation signed by both parties and concluded it did not bear on the issue of discovery. The stipulation on its face was an agreement whereby the Bermans would not claim waiver, *based on Health Net's challenges to the pleadings*, so long as Health Net filed any petition to compel within 30 days of filing its answer.[5] Nevertheless, Health Net argued—and continues to argue on this appeal— the parties' original oral agreement was not limited to demurrers, and should be given broad effect, despite its narrow and specific terms, reduced to writing by Health Net's own counsel. The court predictably and properly rejected that argument.[6]

As to the evidence presented by the Bermans, the trial court said to counsel for Health Net: "You've got to admit you engaged in an awful lot of discovery here, and it's basically to get at the heart, as I read it. And I did read your request for interrogatories. I mean, it's to get to the heart of this case. And there is quite a response, at least on the one." The court's May 28, 1998 minute order denying the petition to compel arbitration stated, "The Court finds, under DAVIS v. CONTINENTAL AIRLINES, that defendants have waived their right to arbitration." Because *Davis* required the plaintiff to show prejudice, this ruling can only be read as a factual finding of prejudice by the trial court. Indeed, when read together with the trial court's comments at the hearing, this is the *only* reasonable reading of the May 28 minute order.

This finding of fact by the trial court may not be disturbed by this court unless we find it supported by *no* substantial evidence. (*Davis, supra*, 59

---

trial court could reasonably infer from these facts that defendants unreasonably delayed their motion to compel arbitration in order to take advantage of court discovery procedures to learn plaintiff's strategies, evidence, and witnesses and to pin plaintiff down to a particular version of the facts."

[5]The stipulation provided: "That by the filing of any motion or pleading challenging the sufficiency of the First Amended Complaint or any subsequently filed and served complaint in this action, defendants HEALTH NET and HEALTH SYSTEMS INTERNATIONAL, INC. shall not be accused of having waived or be deemed to have waived any right to seek an order compelling binding arbitration of this matter . . . ."

[6]The court said: "Now, are you saying, 'don't hold defense counsel to what he said, because he signed it but he didn't really read it or he didn't really mean it'?" The court also noted Health Net served its first discovery requests the day *before* its counsel signed the stipulation.

Cal.App.4th 205, 211 ["the substantial evidence rule requires indulging the inferences favorable to the trial court's judgment"].) The trial court reviewed hundreds of pages of discovery and, as in *Davis*, drew an inference defendant had sought and obtained information not available in arbitration, thus causing prejudice to plaintiff. (*Id.* at pp. 213-214 [where "defendants obtained 1,600 pages of documents from plaintiff," among other discovery, the record "amply supports the trial court's implied rejection of defendants' implication that they conducted limited discovery of the type which might have been permissible in a special proceeding to compel arbitration"].) In this case, as in *Davis*, such an inference is amply supported by the record.

## II. *The Bermans Demonstrated Adequate Prejudice to Support the Trial Court's Finding of Waiver.*

On appeal, Health Net contends the trial court's order should be reversed because the Bermans did not prove "specific prejudice" in addition to its extensive discovery responses. In order to accept this contention, we would have to hold prejudice is not established, as a matter of law, when a party seeking arbitration first engages in full-blown civil discovery directed to the heart of the case, unless there is a *further* specific showing—beyond the mere use of court procedures to learn the plaintiff's strategies, evidence, and witnesses—the plaintiff's particular answers to the discovery requests prejudiced the plaintiff in a specific, identifiable way. That contention was effectively rejected by the *Davis* court, which turned aside defendants' claim plaintiff had to show "either that defendants actually 'litigated' the case before moving to compel arbitration, or that plaintiff has suffered a specific type of prejudice affecting plaintiff's ability to arbitrate, for example faded recollection of witnesses due to defendants' .delay. [Citations.]" (*Davis, supra,* 59 Cal.App.4th 205, 214.) The *Davis* court concluded the vice was in the use of discovery processes to gain information which defendants could not have gained in arbitration, and did not require any further specific showing of how that information disadvantaged the plaintiffs. (*Id.* at p. 215.) We see no reason to do so here.

This case, where the delay in bringing the motion to compel arbitration was not necessarily a surprise to the Bermans because of the stipulation allowing Health Net to challenge the pleadings, arguably presents a closer case than *Davis*. Nonetheless, there was nothing in the stipulation permitting Health Net to proceed with full-blown discovery while engaging in multiple rounds of challenges to the pleadings, and the trial court could reasonably infer the discovery revealed information which could not have been gained in arbitration, to the Bermans' prejudice. Accordingly, we cannot conclude the record before the trial court compelled a finding of nonwaiver as a matter

of law. As in *Davis*, "[g]iven its implied [here, actual] finding that defendants engaged in extensive discovery from plaintiff before moving to compel arbitration, the trial court could properly find defendants waived arbitration." (*Davis, supra,* 59 Cal.App.4th 205, 214.)

#### A. *Health Net's Discovery Requests Established a Waiver Despite Health Net's Dissatisfaction with the Bermans' Responses Thereto.*

On appeal, Health Net characterizes its discovery requests as "desultory" and makes much of its claim it "obtained no discovery that could reveal the plaintiffs' strategies." It argues because "the discovery responses are all but devoid of substantive content," the Bermans were not prejudiced by responding to multiple sets of interrogatories and over 100 categories of requests for production of documents. Health Net contends "the vast bulk of the Bermans' discovery responses . . . consist simply of allegations reprinted from the First Amended Complaint," which "supply no new information, and reveal no litigation strategy."[7]

We cannot agree. The test for prejudice is not, as Health Net claims, whether the discovery reveals "secret strategies or confidential information." It is whether "defendants used the discovery processes of the court to gain information about plaintiff's case which defendants could not have gained in arbitration." (*Davis, supra,* 59 Cal.App.4th 205, 215.) There can be no question Health Net did precisely that. Moreover, Health Net admits there *was* "disclosure of substantive information in the Bermans' responses." While the allegations in the first amended complaint are just that, allegations, the Bermans' discovery responses were verified by Peter Berman and thus constituted his sworn testimony as to those matters. Moreover, even discovery responses totally devoid of substantive content (not the case here) can reveal volumes about the strength and weakness of a party's case.[8] Even if the Bermans' discovery responses added nothing to the allegations in their

---

[7]This was not the trial court's view. The trial court stated at the May 28 hearing: "And I did read your request for interrogatories. I mean, it's to get to the heart of this case. And there is quite a response, at least on the one." And later: "I have gone through all of the documents, all of those documents. . . . [T]he discovery was substantial." In addition to their lengthy responses to Health Net's contention interrogatories, the Bermans identified numerous persons in response to interrogatories requesting identification of persons with knowledge of the facts on which the Bermans based their contentions, including persons not named in the complaint. Additionally, according to Health Net there were nearly 2,000 unidentified pages of unknown material produced by the Bermans in response to the document demands. (Those pages are not in the record on appeal.)

[8]For example, in *Union Bank v. Superior Court* (1995) 31 Cal.App.4th 573, 589-590 [37 Cal.Rptr.2d 653] the court held a "defendant [moving for summary judgment] may rely on factually devoid discovery responses to shift the burden of proof pursuant to [Code of Civil Procedure] section 437c, subdivision (o)(2). Once the burden shifts as a result of the factually

first amended complaint, that fact in and of itself would be highly significant to Health Net in developing its strategy for arbitration, litigation, or settlement. The important fact here is Health Net's discovery forced the Bermans to reveal their hand. Whether that hand consisted of a royal flush (in the form of, say, specific and previously undisclosed facts supporting every facet of the Bermans' case) or a pair of twos (in the form of allegations from the complaint, repeated under oath), it is the *fact* of the disclosure, not the specifics of its content, which constitutes the prejudice.

Therefore, we can find no fault with the trial court's decision on the record before it. Certainly this is not a case "where the record before the trial court establishes a lack of waiver as a matter of law"—the standard required for reversal of a finding of waiver made by the trial court. (*Doers, supra,* 23 Cal.3d 180, 185.) The trial court had before it evidence of substantial discovery and the Bermans' undisputed claim Health Net would not have been able to obtain discovery in arbitration proceedings.[9] There was no answer from Health Net to this showing, except the repeated claim Health Net conducted the discovery in reliance on a stipulation that explicitly said something quite different. On this record, it is hard to see how the trial court could reach any other result.

Health Net cites *Keating v. Superior Court* (1982) 31 Cal.3d 584, 608 [183 Cal.Rptr. 360, 645 P.2d 1192], reversed in part on other grounds, *Southland Corp. v. Keating* (1984) 465 U.S. 1 [104 S.Ct. 852, 79 L.Ed.2d 1], in which the California Supreme Court affirmed the trial court's finding there was no waiver, where discovery was reciprocal and the plaintiffs did not make "specific claims of prejudice." However, *Keating* is easily distinguishable from this case. In *Keating* the court noted "Our function is to determine whether the trial court's finding of no waiver is supported by substantial evidence. Franchisees have not made specific claims of prejudice. Nor have we been supplied with any record of the discovery proceedings already undertaken by which we could independently assess such claims if made. Accordingly, we cannot conclude that the trial court erred in finding no waiver and in ordering arbitration."[10] (*Keating, supra,* 31 Cal.3d 584, 608.)

In this case, unlike *Keating,* the trial court found sufficient prejudice to support waiver. While the Supreme Court in *Keating* had the "function . . .

---

devoid discovery responses, the plaintiff must set forth the specific facts which prove the existence of a triable issue of material fact."

[9] Counsel for Health Net agreed on this point, telling the court discovery under the arbitration statute was "very limited."

[10] In a later case, the court described the discovery in *Keating* as "preliminary skirmishes." (*Christensen v. Dewor Developments* (1983) 33 Cal.3d 778, 782 [191 Cal.Rptr. 8, 661 P.2d 1088].)

to determine whether the trial court's finding of *no waiver* is supported by substantial evidence" (*Keating v. Superior Court, supra,* 31 Cal.3d 584, 608, italics added), our function is to determine whether substantial evidence supports the trial court's finding of *waiver.* Substantial evidence supported nonwaiver in *Keating* and waiver here. *Keating* certainly does not establish a rule of general application whereby parties opposing arbitration based on discovery must *always* make specific claims of a particular type of prejudice.

> B. *The Bermans Were Prejudiced Even Though They Engaged in Discovery of Their Own.*

In its motion for reconsideration, Health Net argued the Bermans could not prove "specific prejudice" because the Bermans conducted more discovery than Health Net. Health Net claimed plaintiff could not show any disadvantage under those facts, citing *Keating v. Superior Court, supra,* 31 Cal.3d 584. These arguments were properly taken into consideration by the trial court, which found they did not support a finding of waiver by the Bermans.[11] Health Net raises the same arguments on appeal.

We see no error in the trial court's denial of Health Net's motion for reconsideration. Under Code of Civil Procedure section 1008, subdivision (a), such a motion may only be made "based upon new or different facts, circumstances, or law . . . ." However, as the court noted, "I think I don't see anything new or different that's being argued in this." The only thing new appears to have been Health Net's belated argument the Bermans had to prove specific prejudice and could not do so because the Bermans had also conducted discovery. This argument could have been made in connection with the original motion, as the issue was clearly raised in the Bermans' opposition papers. As this court has said, "the party seeking reconsideration [must] provide both newly discovered evidence and an explanation for the failure to have produced such evidence earlier. [Citation.]" (*Robbins v. Los Angeles Unified School Dist.* (1992) 3 Cal.App.4th 313, 317 [4 Cal.Rptr.2d 649].)[12] The trial court was entitled to reject the explanation from Health Net: "we understood there was an unqualified nonwaiver stipulation so

---

[11]The trial judge denied the motion for reconsideration, stating the only thing new in Health Net's motion "was the amount of discovery engaged in by plaintiff, as well." This, the court said, merely meant "that both sides had chosen to engage in the litigation route rather than the arbitration route," and this would not change his ruling.

[12]" 'An order denying a motion for reconsideration is interpreted as a determination that the application does not meet the requirements of section 1008. If the requirements have been met to the satisfaction of the court but the court is not persuaded the earlier ruling was erroneous, the proper course is to grant reconsideration and to reaffirm the earlier ruling.' [Citation.]" (*Mink v. Superior Court* (1992) 2 Cal.App.4th 1338, 1342 [4 Cal.Rptr.2d 195].)

discovery was not an issue." The breadth of the stipulation was squarely raised in the Bermans' opposition, both in declarations and argument, to which Health Net had full opportunity to reply.[13]

Even if we assume the trial court in effect granted the motion for reconsideration and considered the additional evidence presented by Health Net,[14] we cannot say the record would compel a finding of nonwaiver as a matter of law. Health Net submitted evidence with its motion for reconsideration purporting to show the Bermans conducted "reciprocal discovery," and argued the Bermans did not show specific prejudice. Health Net makes these same arguments on appeal, but they do not persuade. As the court in *Davis* said, the vice—that is, the prejudice—is in use of discovery processes "to gain information about plaintiff's case which defendants could not have gained in arbitration." (*Davis, supra,* 59 Cal.App.4th 205, 215; see also *Kaneko Ford Design v. Citipark, Inc.* (1988) 202 Cal.App.3d 1220, 1228-1229 [249 Cal.Rptr. 544] [prejudice accrued from five-and-one-half-month delay in seeking order to compel arbitration, in forms of time and effort spent, legal expenses and costs incurred, and disclosure of defenses and strategies].) We cannot conclude the prejudice is overcome simply because the plaintiff has also engaged in discovery. Indeed, the plaintiff in *Davis* apparently also engaged in discovery.[15] (*Davis, supra,* 59 Cal.App.4th 205, 208.)

Cases decided in federal courts are in accord with the *Davis* court's holding the prejudice lies in gaining information not available in arbitration—not in the lack of reciprocity. Federal courts have held "sufficient

---

[13]For example, the declaration of counsel for the Bermans stated: ". . . Health Net sought, and obtained, our agreement that Health Net's pleading challenges would not be used as a basis for asserting that Health Net had waived its right to compel arbitration in this action. That agreement, however, was expressly limited to 'the filing of any motion or pleading challenging the sufficiency' of the relevant complaints."

[14]The court said: "I will deny the motion for reconsideration. Even if I were to reconsider it, based on the information that's been provided, I would stand by my earlier ruling."

[15]It is true in *Davis,* the court indicated the trial court "could reasonably find the discovery conducted was not equivalent for both sides and would work an unfair advantage for defendants if arbitration were ordered." (*Davis, supra,* 59 Cal.App.4th 205, 215.) However, we do not read *Davis* to say the lack of equivalence in discovery is a necessary element of the decision—only, in that case, it was one of the facts which supported the trial court's waiver finding. Moreover, if we were to agree with the concurring opinion that the lack of equivalence in discovery is essential to a finding of prejudice under *Davis,* we would subject the party opposing arbitration to the following Catch-22: "If both parties conduct discovery before the motion to compel arbitration, you will have to go to arbitration, where discovery is not permitted. If you permit the other party to conduct unilateral discovery pending the motion to compel arbitration, you will be able to remain in court where discovery is permitted—but you will get a late start on your own discovery." This conundrum constitutes prejudice in and of itself. We see no sense in a rule that would deprive a party who admittedly wishes to litigate of its right to conduct full discovery *and* oppose a petition to compel arbitration. Therefore we do not read *Davis* as imposing such a rule.

prejudice to sustain a finding of waiver exists when a party takes advantage of pre-trial discovery not available in arbitration" (*PPG Industries, Inc. v. Webster Auto Parts, Inc.* (2d Cir. 1997) 128 F.3d 103, 109), and have explicitly rejected the claim prejudice is absent because the party opposing arbitration "engaged in the bulk of discovery." (*S & R Co. of Kingston v. Latona Trucking, Inc.* (2d Cir. 1998) 159 F.3d 80, 84 ["petitioners have not shown that the district court was clearly erroneous in finding that they benefited by obtaining discovery on the arbitrable claims that would not have been available in arbitration"].) Accordingly, we find no error in the trial court's decision reciprocal discovery would not change its ruling.

### C. The Supposed Lack of Unreasonable Delay or Surprise Does Not Support Health Net's Position.

Health Net argues there was no unreasonable delay or surprise involved in its petition to compel arbitration because of the stipulation whereby Health Net would challenge the pleadings before moving to compel arbitration. We cannot agree there was no unreasonable delay or surprise as a matter of law, despite the existence of the parties' stipulation.[16] Even giving effect to the stipulation, the trial court could reasonably have found surprise was indeed involved in Health Net's petition to compel arbitration. While Health Net purported to preserve its right to petition to compel arbitration via the stipulation, its behavior in conducting extensive substantive discovery left the Bermans in the dark as to when and whether it would actually file such a petition. Moreover, the stipulation was silent as to the effect of events as they actually happened—a petition to compel arbitration denied, appealed, and then dismissed as moot. Did the stipulation permit Health Net to try again after its first petition was denied? We cannot tell from the record. In any event, the Bermans had no choice but to respond to Health Net's discovery, and to propound discovery of their own, in order to protect themselves in case Health Net decided *not* to move to compel arbitration or

---

[16]While the trial court did not seem troubled by the stipulation permitting Health Net to challenge the pleadings before moving to compel arbitration, we find it problematic. Were it not for the stipulation, there can be no doubt Health Net would have been found to have waived its right to compel arbitration by engaging in multiple rounds of demurrers. While the issue is not necessary to the outcome of this case, in a proper case we would be inclined to find stipulations such as the one in this case void as against public policy, because " 'The courtroom may not be used as a convenient vestibule to the arbitration hall so as to allow a party to create his own unique structure combining litigation and arbitration.' [Citation.]" (*Christensen v. Dewor Developments, supra,* 33 Cal.3d 778, 784.) As the court noted in *Sobremonte v. Superior Court* (1998) 61 Cal.App.4th 980, 996 [72 Cal.Rptr.2d 43] (finding a waiver of arbitration by participation in discovery and trial preparation), "Arbitration is an expedient, efficient and cost-effective method to resolve disputes. If we consider the amount of time and money [the parties] have already spent in the judicial system, any benefits they may have achieved from arbitration have been lost."

was unsuccessful in doing so. Again, this conduct of discovery not available in arbitration is the "vice" the court in *Davis* found supported a finding of waiver. (*Davis, supra,* 59 Cal.App.4th 205, 215.)

D. *Subjective Bad Faith Is Not a Required Element in a Finding of Waiver of the Right to Compel Arbitration.*

Health Net also places emphasis on the fact it did not engage in "gamesmanship" and was "up-front" about its intent to ultimately compel arbitration. While we do not suggest Health Net necessarily acted in bad faith, we do not read *Davis* to require a finding of bad faith as a prerequisite to finding waiver. (See *Davis, supra,* 59 Cal.App.4th 205, 215.) Rather, bad faith is an *alternative* ground for finding waiver. Again, the crucial inquiry is not the subjective motivation of the party seeking arbitration, but whether the party has availed itself of discovery not available in arbitration. (*Ibid.*)

E. *The Existence of the Bermans' Nonarbitrable Claim for Injunctive Relief Does Not Nullify Health Net's Waiver.*

On appeal, Health Net claims it had a right to conduct discovery relating to the Bermans' apparently nonarbitrable claim for injunctive relief pursuant to Business and Professions Code section 17200. It further argues because the discovery it propounded was arguably relevant to the injunction claim, it cannot possibly have waived arbitration by conducting such discovery. It claims it "was entitled—perhaps even obligated—to proceed with discovery about any claim in the pleading that was not (or perhaps even might not be) subject to arbitration. To hold otherwise would stop, dead in its tracks, the progress of any case that harbors even arguably-arbitrable claims." In support of this theory, Health Net relies on *Broughton v. Cigna Healthplans* (1999) 21 Cal.4th 1066, 1088 [90 Cal.Rptr.2d 334, 988 P.2d 67], in which the Supreme Court held "when a suit contains both arbitrable and inarbitrable claims, the arbitrable claims should be severed from those that are inarbitrable and sent to arbitration. [Citation.]"

We reject Health Net's argument for the simple reason it never sought to sever the section 17200 injunction claim, nor did it ever give any indication its discovery was directed towards that claim. If Health Net truly was concerned about discovery relating to the injunction claim, it could either have moved immediately to sever the arbitrable and nonarbitrable claims, or moved earlier to compel arbitration. (See *Broughton, supra,* 21 Cal.4th 1066, 1088 [arbitrable claims should be severed "even when severance leads to inefficiency"].) The dilemma Health Net poses—the *Davis* rule of waiver by discovery would mean no discovery at all can commence with respect to

any claim—even claims that cannot be sent for arbitration—unless and until the defendant waives arbitration as to *all* claims—is of its own making. The solution, clearly stated by the Supreme Court in *Broughton*, is to sever the nonarbitrable claims and conduct discovery as to them. (*Ibid.*) Or easier still, to move to compel arbitration at an early stage, before engaging in either discovery or multiple rounds of pleading challenges.

## CONCLUSION

We find no principled way to distinguish this case from *Davis*. In both *Davis* and the instant case, the trial court found defendants engaged in extensive discovery, including hundreds of interrogatories and requests for production which yielded thousands of pages of responses. (*Davis, supra*, 59 Cal.App.4th 205, 213.) So far as the record reveals, in neither of these cases did the discovery result in the disclosure of any particularly damaging admissions by plaintiff, or the production of any documents highly damaging to plaintiffs' (or defendants') case. Nevertheless, in both cases the trial courts found prejudice sufficient to establish waiver. It is not the function of this court to reweigh the evidence and substitute its judgment for the judgment of the trial court. Accordingly, we affirm the trial court's denial of Health Net's petition to compel arbitration.

## DISPOSITION

The judgment denying appellants' petition to compel arbitration is affirmed.

Lillie, P. J., concurred.

**WOODS, J.,** Concurring.—I agree with my colleagues that the judgment must be affirmed, based on the record before the trial court when it ruled on Health Net's motion to compel arbitration. I write separately to state my view that a finding of prejudice sufficient to establish waiver requires more than a mere showing that the party seeking arbitration has obtained discovery not available in arbitration, as the majority opinion suggests. I think the law is clear that there must be, in addition, some basis for inferring that the discovery obtained has worked an unfair advantage to the moving party, or some other evidence of unreasonable delay, bad faith or the like from which prejudice may be inferred.

Arbitration is strongly favored. In waiver cases, our Supreme Court has "stressed the significance of the presence or absence of prejudice," observing that waiver does not occur "by mere participation in litigation . . . ."

*(Keating v. Superior Court* (1982) 31 Cal.3d 584, 605 [183 Cal.Rptr. 360, 645 P.2d 1192].)[1]

My concern in this case arises because it appears from the record on appeal that both Health Net *and* the Bermans engaged in extensive discovery. This suggests to me that *both* parties likely have obtained substantial information about the other's case—"strategies, evidence and witnesses"— that would not have been available in arbitration. If that is so, then it is hard to see what prejudice the Bermans have suffered from Health Net's discovery, as both parties would be in equivalent positions. Under those circumstances, in the absence of some other factor—unreasonable delay, bad faith misconduct, or the like, none of which were suggested by the record—the requisite showing of prejudice would be conspicuously absent.[2]

In short, I think the majority misreads the *Davis* case when it says that the "vice" or "prejudice" required by *Davis* can be found *solely* in the use of discovery to obtain information about the other party's case that could not be gained in arbitration. (*Davis v. Continental Airlines, Inc.* (1997) 59 Cal.App.4th 205, 215 [69 Cal.Rptr.2d 79].) That would be so in most cases where there has been any discovery, yet we know that waiver does not occur by mere participation in litigation. More is required, as the *Davis* case itself makes plain.

After observing that the vice or prejudice lay in obtaining information not available in arbitration, the *Davis* court's very next sentence points out: "After obtaining discovery from plaintiff by court processes, defendants then belatedly sought to change the game to arbitration, *where plaintiff would not have equivalent discovery rights.*" (*Davis v. Continental Airlines, Inc., supra,* 59 Cal.App.4th at p. 215, italics added.) The court explicitly states that the defendants' participation in discovery would *not* necessarily compel a finding of prejudice and waiver, and that this presents a factual question for the court "based on the particular circumstances of the case." In *Davis*, the court continued, "the trial court could reasonably find the discovery conducted was not equivalent for both sides and would work an unfair advantage for defendants if arbitration were ordered." (*Ibid.*) In my view, it is hard to read

---

[1]*Keating* was reversed in part on other grounds in *Southland Corp. v. Keating* (1984) 465 U.S. 1 [104 S.Ct. 852, 79 L.Ed.2d 1].

[2]I cannot agree with the majority that the trial court could reasonably have found on this record that Health Net's petition to compel arbitration was a "surprise" to the Bermans. The parties' stipulation specified the time within which Health Net had to file its petition, and as the majority points out, Health Net served its first discovery requests the day *before* its counsel signed the stipulation.

*Davis* without concluding that the lack of equivalence in discovery was indeed a critical element in the finding of prejudice.[3]

That being said, I nonetheless agree with the majority that, on the record before it, the trial court properly denied Health Net's motion to compel arbitration. The Bermans opposed Health Net's motion to compel by presenting evidence of the extensive discovery conducted by Health Net, and claiming that, as in *Davis*, prejudice resulted from the use of the court's discovery procedures to learn the Bermans' "strategies, evidence, and witnesses . . . ." In response, Health Net said nothing and submitted no evidence at all on the issue of prejudice from the discovery, failing to produce evidence of reciprocal discovery or otherwise argue there was no prejudice to the Bermans from its discovery. On that state of the record, in the absence of any evidence to the contrary, the trial court was entitled to infer that the Bermans were prejudiced by Health Net's discovery. As the majority says, it is difficult to see how the trial court could have reached any other result.

I likewise agree there was no error in the trial court's denial of Health Net's motion for reconsideration. Under proper circumstances, as outlined above, I would question the trial court's remarks suggesting that the discovery engaged in by the Bermans was irrelevant to the waiver question. Nonetheless, Health Net's motion presented neither newly discovered evidence nor a sufficient explanation for the failure to produce it earlier, so denial of the motion was entirely proper.

A petition for a rehearing was denied June 20, 2000, and appellants' petition for review by the Supreme Court was denied August 16, 2000.

---

[3] I do not, as the majority suggests in footnote 15, read *Davis* as imposing "a rule that would deprive a party who admittedly wishes to litigate of its right to conduct full discovery *and* oppose a petition to compel arbitration." (Maj. opn., *ante*, at p. 1370, fn. 15.) First, I would point out that here, the "party who admittedly wishes to litigate" in fact agreed to arbitrate, so I am not overly concerned with the "conundrum" in which he finds himself. Second, there really is no conundrum. In the ordinary case, a defendant who conducts extensive discovery and waits six months to move to compel arbitration *will* have waived arbitration—because of unreasonable delay, bad faith misconduct, gamesmanship, one-sided discovery, or some other specific unfair advantage to which plaintiff can point. All I am saying is that the plaintiff must show one of these things, and cannot rely *only* on the fact that discovery was conducted. *Davis* requires more, as do other California precedents, and so should we.