Filed 4/14/14  Mata v. Regency Park Senior Living CA2/5

**NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION FIVE

| | |
|---|---|
| JUDITH MATA, | B249130 |
| Plaintiff and Respondent, | (Los Angeles County Super. Ct. No. BC493461) |
| v. | |
| REGENCY PARK SENIOR LIVING, INC., | |
| Defendant and Appellant. | |

APPEAL from an order of the Superior Court of Los Angeles County, Elihu M. Berle, Judge.  Affirmed.

Reed Smith, Thomas E. Hill and Mara D. Matheke for Defendant and Appellant.

Hayes Pawlenko, Matthew B. Hayes and Kye D. Pawlenko for Plaintiff and Respondent.

_____

The trial court denied the motion of defendant and appellant Regency Park Senior Living, Inc. (Regency Park), to compel plaintiff and respondent Judith Mata to arbitrate her claims against Regency Park on an individual basis. Regency Park contends the court erred in finding a waiver of the right to compel arbitration. It further contends the court erroneously found the Federal Arbitration Act (FAA) inapplicable to the arbitration agreement and failed to compel arbitration on an individual, rather than class-wide, basis. Because Regency Park's actions were inconsistent with the intent to arbitrate and caused prejudice to Mata, we conclude that the trial court's finding of waiver is supported by substantial evidence. The questions of whether the FAA applies and whether class-wide arbitration is permissible under the agreement are moot.

## FACTUAL AND PROCEDURAL BACKGROUND

On October 9, 2012, Mata filed a putative class action complaint alleging her former employer Regency Park violated various wage and hour laws. The court assigned the matter to the complex litigation department and ordered the parties to file an initial status report in advance of an initial status conference set for December 20, 2012. The court also imposed a stay on all proceedings until the initial status conference. Mata filed a proof of service of summons on October 31, 2012, and Regency Park retained counsel to represent it in the matter by November 12, 2012.

On December 5, 2012, the parties[1] met and conferred telephonically to prepare the required initial status report. During that call, Regency Park advised that it was aware of an arbitration agreement signed by Mata but was leaning against seeking to compel arbitration, and a final decision would be made within the next month. The parties jointly filed an initial status report on December 13, 2013. The report states: "During her

---

[1] For clarity and to avoid repetition, all references to statements and actions taken by counsel for Mata or Regency Park will be described as statements and actions by the respective party, not the party's counsel.

2

employment with Regency, Plaintiff signed an arbitration agreement which Defendant asserts covers Plaintiff's claims in this lawsuit[.] Defendant asserts that the arbitration agreement is enforceable . . . . Accordingly, Regency is considering filing a motion to compel arbitration. Regency realizes this motion must be filed in a timely manner and intends to determine whether arbitration is the appropriate forum to adjudicate Plaintiff's claims in the next thirty days." The parties identified the motion to compel arbitration as the only crucial early motion and agreed to conduct preliminary discovery with respect to class certification issues, including discovery of contact information for absent class members. The parties proposed a second status conference in March 2013, stating: "Defendant believes that at this time, any motion to compel can be decided before March 2013. In addition, Plaintiff believes its preliminary discovery . . . may be completed before March 2013." At the status conference on December 20, 2012, Regency Park again advised Mata it was doubtful it would elect to seek arbitration, but it was conducting a final evaluation and would have a decision shortly. With the court's leave, Mata filed a first amended complaint on December 28, 2012.

On December 31, 2012, plaintiff propounded discovery relating to her individual claims as well as class discovery. On Wednesday, January 16, 2013, Mata inquired about the status of Regency Park's arbitration decision. Regency Park responded by e-mail: "In regards to the motion to compel arbitration, I am hoping to work out that detail by the end of the week or early next week. I will keep you informed and provide you with an update on Friday." Almost two weeks later, on January 29, 2013, Regency Park advised Mata by voicemail that Regency Park would be proceeding in court and filing a demurrer. On January 30, 2013, the parties conferred by phone and Mata expressly confirmed that Regency Park had decided not to seek arbitration and would instead proceed with filing a demurrer and motion to strike. At Regency Park's request, Mata granted Regency Park a one-week extension (from February 1 to February 8) to file a responsive pleading, as well as a two-week extension to respond to Mata's special interrogatories and request for production of documents, making responses due by February 19, 2013. Mata would not have granted an extension of time to file a demurrer

3

and motion to strike if Regency Park planned to move to compel arbitration, as responding to the demurrer and motion to strike would have been a waste of time and money if the case were going to be moved to arbitration.

Regency Park filed a demurrer and motion to strike on February 8, 2013. On February 20, 2013, Regency Park served its own discovery, including form interrogatories, 68 special interrogatories, and 52 categories of document requests. The discovery sought information and documents relating not only to Mata's individual claims but also relating to putative class members.

On February 26, 2013, Regency Park responded to Mata's discovery, mostly objecting to the class discovery on the grounds that a *Belaire*[2] procedure must be followed. Mata sent a draft *Belaire* notice and a meet and confer letter responding to Regency Park's discovery objections on March 1, 2013.

On March 11, 2013, the trial court overruled Regency Park's demurrer in its entirety and denied the motion to strike, except to the extent it was unopposed by Mata. It also granted Mata leave to file a second amended complaint adding meal and rest break allegations and scheduled a hearing on a second demurrer for April 22, 2013. The record on appeal does not provide us with copies of the first amended complaint, demurrer, motion to strike, opposition, or reply briefs and also does not include a transcript or settled statement summarizing the hearing on the demurrer or motion to strike.

On March 14, 2013, Mata filed her second amended complaint and served a second set of interrogatories and document requests seeking additional class discovery. On March 15, 2013, the parties met and conferred again to finalize the *Belaire* notice. Regency Park agreed to provide supplemental discovery responses by March 22, 2013. Regency Park agreed to share the cost of a third party administrator for the *Belaire* notice process and circulated a final version of the notice on March 19, 2013.

_____

[2]    Parties seeking discovery of identifying information for putative class members must follow an opt-out notice procedure described in *Pioneer Electronics, Inc. v. Superior Court* (2007) 40 Cal.4th 360 and *Belaire West Landscape, Inc. v. Superior Court* (2007) 149 Cal.App.4th 554.

4

On March 20, 2013, Regency Park advised Mata that Regency Park was in the process of finding different counsel. Given the anticipated change in counsel, the parties stipulated to extend the deadline for Regency Park to file an answer to the second amended complaint from March 25 to April 16, 2013. The stipulation stated an *answer* would be filed and made no reference to a possible motion to compel arbitration. Mata responded to Regency Park's discovery on March 26, 2013.

Represented by new counsel, Regency Park requested and received an extension of time to respond to Mata's second set of discovery on April 10, 2013. There was no mention of an intent to file a motion to compel arbitration. Regency Park did not again raise the topic of arbitration until an April 12, 2013 letter requesting Mata dismiss her claims or enter a stipulation to stay the action and submit her claims to arbitration. On April 16, 2013, Regency Park filed a motion to compel arbitration, which the trial court denied on May 23, 2013. Mata spent 75 hours in attorney time, valued at more than $30,000, responding to Regency Park's class discovery, meeting, and conferring about Regency Park's class discovery responses, preparing and finalizing a *Belaire* notice and procedure, and opposing Regency Park's demurrer and motion to strike.

## DISCUSSION

### A. Standard of Review

"We apply the substantial evidence standard of review to the court's finding defendant waived its right to arbitrate." (*Adolph v. Coastal Auto Sales, Inc.* (2010) 184 Cal.App.4th 1443, 1449 (*Adolph*); see also *St. Agnes Medical Center v. PacifiCare of California* (2003) 31 Cal.4th 1187, 1196 (*St. Agnes*) ["[g]enerally, the determination of waiver is a question of fact, and the trial court's finding, if supported by sufficient evidence, is binding on the appellate court"].) If the facts are undisputed and only one inference may be reasonably drawn, the issue is one of law and we review de novo. (*St. Agnes*, *supra*, at p. 1196; *Platt Pacific, Inc. v. Andelson* (1993) 6 Cal.4th 307, 319.) The

5

substantial evidence standard of review applies because the key issue is whether the evidence supports an inference that Regency Park waived its contractual right to arbitration. We draw all reasonable inferences and resolve all ambiguities in favor of the trial court's findings. (*Burton v. Cruise* (2010) 190 Cal.App.4th 939, 946 (*Burton*).)

## B. Waiver of Right to Arbitrate

When a party to an arbitration agreement moves to compel arbitration, "the court shall order the petitioner and the respondent to arbitrate the controversy . . . unless it determines that: [¶] (a) The right to compel arbitration has been waived by the petitioner . . . ." (Code Civ. Proc., § 1281.2.)[3] "Although the statute speaks in terms of 'waiver,' the term is used '"as a shorthand statement for the conclusion that a contractual right to arbitration has been lost."' [Citation] This does not require a voluntary relinquishment of a known right; to the contrary, a party may be said to have 'waived' its right to arbitrate by an untimely demand, even without intending to give up the remedy. In this context, waiver is more like a forfeiture arising from the nonperformance of a required act. [Citations.]" (*Burton*, *supra*, 190 Cal.App.4th at p. 944.)

State and federal law reflect a strong public policy favoring arbitration because it permits parties to resolve disputes quickly and with less expense than litigation. (*St. Agnes*, 31 Cal.4th at p. 1204; *AT&T Mobility LLC v. Concepcion* (2011) ___ U.S. ___ [131 S.Ct. 1740, 1745] (*AT&T Mobility*).) The party opposing arbitration has a heavy burden of proof and any doubts concerning waiver should be resolved in favor of arbitration. (*St. Agnes*, *supra*, at p. 1195.) "Both state and federal law emphasize that no single test delineates the nature of the conduct that will constitute a waiver of

_____

[3]     Mata argues on appeal that Regency Park expressly waived the right to arbitrate on January 30, 2013 when it notified Mata it had elected against pursuing arbitration and would be filing a demurrer and motion to strike instead. Regency Park contends Mata forfeited this argument by failing to raise it before the trial court. In any event, because we find substantial evidence supports the trial court's finding of waiver, we need not address whether Regency Park expressly waived its right to arbitrate.

arbitration." (*Id*. at pp. 1195-1196.)  "'In determining waiver, a court can consider "(1) whether the party's actions are inconsistent with the right to arbitrate; (2) whether 'the litigation machinery has been substantially invoked' and the parties 'were well into preparation of a lawsuit' before the party notified the opposing party of an intent to arbitrate; (3) whether a party either requested arbitration enforcement close to the trial date or delayed for a long period before seeking a stay; (4) whether a defendant seeking arbitration filed a counterclaim without asking for a stay of the proceedings; (5) 'whether important intervening steps [e.g., taking advantage of judicial discovery procedures not available in arbitration] had taken place'; and (6) whether the delay 'affected, misled, or prejudiced' the opposing party."'" (*Id*. at p. 1196, quoting *Sobremonte v. Superior Court* (1998) 61 Cal.App.4th 980, 992.)  Not one of these factors predominates and each case must be examined in context.  (*Burton, supra,* 190 Cal.App.4th at pp. 944-945.)  One critical factor in determining waiver is whether litigation results in prejudice to the party opposing arbitration.  (*St. Agnes*, *supra,* at p. 1203; *Augusta v. Keehn & Associates* (2011) 193 Cal.App.4th 331, 340 (*Augusta*).)

When the trial court denied Regency Park's motion to compel arbitration, it found waiver based on facts demonstrating that Regency Park (1) acted inconsistently with the intent to arbitrate and (2) its actions resulted in prejudice to Mata.  Although the court's ruling does not expressly mention unreasonable delay, we examine that factor before moving on to the other two.

### 1. *Unreasonable Delay*

The parties disagree about the length of Regency Park's delay in filing its motion to compel arbitration, with Regency Park arguing it filed its motion to compel within three and a half months after the trial court lifted a stay on all proceedings, and Mata arguing that Regency Park waited more than six months from the filing of the original complaint in October 2012.  Regardless of the exact time frame, we conclude the delay was unreasonable in light of Regency Park's failure to even *demand* arbitration for more

7

than five months after learning of Mata's lawsuit. It also provided no explanation for delaying almost three months after January 19, 2013, its self-imposed deadline for filing a motion to compel arbitration, while at the same time demurring to Mata's first amended complaint and actively participating in discovery.

In *Lewis v. Fletcher Jones Motor Cars, Inc.* (2012) 205 Cal.App.4th 436 (*Fletcher Jones*), the defendant participated in litigation for five months, filing multiple demurrers and motions to strike and participating in discovery without moving to compel arbitration. The appellate court affirmed a finding of waiver and agreed that the defendant's delay was unreasonable. "We cannot fault the trial court's conclusion this delay was unreasonable under these circumstances. Indeed, other courts have found comparable delays to be unreasonable and justification for a waiver finding. (*Guess?, Inc. v. Superior Court* (2000) 79 Cal.App.4th 553, 556 (*Guess?*) [less than four months between filing lawsuit and motion to compel arbitration]; *Kaneko Ford Design v. Citipark, Inc.* (1988) 202 Cal.App.3d 1220, 1228-1229 . . . [five and one-half months between filing lawsuit and motion to compel arbitration]; *Augusta*, *supra*, 193 Cal.App.4th at pp. 338-339, [six and one-half months between filing lawsuit and motion to compel arbitration]; *Adolph*, *supra*, 184 Cal.App.4th at pp. 1446, 1449, 1451-1452 [six months between filing lawsuit and demand for arbitration].)" (*Fletcher Jones*, *supra*, at p. 446.)

In the initial status conference statement filed on December 13, 2012, Regency Park acknowledged it was aware of the arbitration agreement and asserted the agreement was enforceable and it was considering filing a motion to compel arbitration. The statement continued: "Regency realizes this motion must be filed in a timely manner and intends to determine whether arbitration is the appropriate forum to adjudicate Plaintiff's claims in the next thirty days. Plaintiff plans to oppose the motion to compel arbitration, should such a motion ultimately be filed." Under the most generous reading of Regency Park's statement, if it chose to file a motion to compel, it would do so on or before January 19, 2013. Regency Park's failure to file such a motion within its own identified time frame, combined with the absence of any explanation for the subsequent delay of

8

almost three months, supports a finding that Regency Park unreasonably delayed bringing a motion to compel arbitration.

## 2. *Conduct Inconsistent with Intent to Arbitrate*

Regency Park contends that there was insufficient evidence to support a finding of waiver, because its demurrer and motion to strike were "mere participation in litigation" and the arbitration agreement expressly permitted the parties to engage in written discovery. (*Keating v. Superior Court* (1982) 31 Cal.3d 584, 605, overruled on other grounds in *Southland Corp. v. Keating* (1984) 465 U.S.1 ["[w]aiver does not occur by mere participation in litigation"]; *Roman v. Superior Court* (2009) 172 Cal.App.4th 1462, 1479 (*Roman*) [finding no waiver where defendant used in litigation the same discovery tools that were available under arbitration agreement].) We disagree with Regency Park's characterization of its actions and hold that substantial evidence supports the trial court's finding of "requisite knowledge and involvement in actions inconsistent with the intent to arbitrate."

"There is no fixed stage in a lawsuit beyond which further litigation waives the right to arbitrate. Rather, the court views the litigation as a whole in determining whether the parties' conduct is inconsistent with a desire to arbitrate." (*Hoover v. American Income Life Ins. Co.* (2012) 206 Cal.App.4th 1193, 1204 (*Hoover*).)

Some cases conclude that a party's participation in litigation in the form of filing demurrers and participating in discovery is insufficient to support a finding of waiver. In *Groom v. Health Net* (2000) 82 Cal.App.4th 1189, the appellate court reversed the trial court's waiver finding where defendant had filed two demurrers and served written discovery on plaintiff, and one year passed between the filing of the lawsuit and defendant's motion to compel arbitration. The court reasoned that the demurrer activity was not the equivalent of litigation on the merits and the plaintiff conceded she was not prejudiced by the discovery. In *Roman, supra,* 172 Cal.App.4th 1462, the court denied a petition for writ of mandate, rejecting the plaintiff's argument that the defendant waived

the right to compel arbitration by filing a demurrer, objecting to the plaintiff's discovery requests, and moving to compel the plaintiff's deposition. The court pointed out that the defendant moved to compel arbitration only two months after the plaintiff filed the lawsuit, no substantive discovery responses had been served by either side, and the plaintiff's litigation expenses—incurred in opposing the defendant's demurrer and motion to compel deposition and objecting to discovery requests—were insufficient by themselves to support a finding of waiver. (*Id*. at pp. 1478-1479.)

However, other cases have found similar activities to be inconsistent with an intent to arbitrate, and the California Supreme Court in *St. Agnes* acknowledged that judicially addressing claims on their merits through pretrial procedures may support a waiver finding. (*St. Agnes*, *supra*, 31 Cal.4th at p. 1201.) In *Adolph*, *supra*, 184 Cal.App.4th at page 1451, the defendant "'filed two demurrers, accepted and contested discovery request[s], engaged in efforts to schedule discovery, [and] omitted to mark or assert arbitration in its case management statement. . . .'" The court found such activity to be inconsistent with the intent to arbitrate. "'It is clear to the court that defendants intended by their conduct to proceed with their court action. It was only until defendant's second demurrer was overruled that it now request[s] this court that it litigate now in another forum to which all appearances it hopes that it will limit its litigation risk and expense.'" (*Ibid*.) In *Guess?*, *supra*, 79 Cal.App.4th at page 556, the court found waiver where the defendant delayed three months without explanation, and in the interim participated in litigation and discovery without any mention of the right to arbitration. The court found it immaterial that the plaintiff had initiated the discovery, because the defendant's responses were inconsistent with its present claim of a right to arbitrate. (*Id*. at p. 558.)

In *Berman v. Health Net* (2000) 80 Cal.App.4th 1359, 1371, the parties expressly stipulated that the defendant's demurrers would not waive its right to compel arbitration. But for the stipulation, the demurrers would have supported a finding of waiver. (*Id*. at p. 1371, fn. 16.) The court found the stipulation itself troubling, pointing out that the parties' actions were not consistent with the public policy favoring arbitration: "'"The courtroom may not be used as a convenient vestibule to the arbitration hall so as to allow

10

a party to create his own unique structure combining litigation and arbitration." [Citation.]' [Citation.]" (*Ibid.*, quoting *Christensen v. Dewor Developments* (1983) 33 Cal.3d 778, 784.)

Viewed in the greater context of the litigation, there is substantial evidence Regency Park's actions were inconsistent with the intent to arbitrate. Both parties were aware of the arbitration agreement from the outset of the litigation. From January 19, 2013, until its April 12, 2013 letter demanding arbitration, Regency Park made no efforts to communicate an intent to arbitrate, or to preserve its right to compel arbitration.

On January 29, 2013, Regency Park sought an extension of time to file a demurrer and confirmed to Mata that it had decided *against* pursuing arbitration. The record does not include a copy of Regency Park's demurrer, but resolving any ambiguity in favor of the trial court's finding, we presume the demurrer sought to address the merits of Mata's complaint. (*Burton*, *supra*, 190 Cal.App.4th at p. 946 [appellate court applying substantial evidence standard of review resolves all ambiguities in support of an affirmance].) It is understandable that Regency Park may have had a change of heart after the trial court overruled its demurrer and granted Mata leave to file an amended complaint. However, the unfavorable result does not change the fact that in filing the demurrer, Regency Park acted in a manner that was inconsistent with an intent to arbitrate.

In addition, the extent of Regency Park's participation in discovery, both objecting and then responding to Mata's class discovery and propounding its own discovery that included interrogatories and document requests related to class issues, is inconsistent with an intent to arbitrate. Regency Park argues that because discovery was permissible under the arbitration agreement, this case is similar to *Roman*, where the court did not find facts sufficient to demonstrate waiver and pointed out that defendant "did not seek to take advantage of discovery tools unavailable in arbitration." (*Roman*, *supra*, 172 Cal.App.4th at p. 1479.) However, the discovery in this case went well beyond that which might have been permissible under the arbitration agreement, because it covered class issues, and Regency Park argued in its motion to compel arbitration and on appeal

11

that the agreement does not authorize class-wide arbitration. Had Regency Park intended to reserve its contractual right to compel arbitration, it should have objected to class discovery as premature, on the grounds that such discovery would be irrelevant if the matter went to arbitration. Regency Park did not raise the right to arbitrate as an objection to Mata's class discovery. It objected only on the ground that no *Belaire* notice procedure was in place. After responding to Mata's class discovery, Regency Park continued to act in a manner inconsistent with an intent to arbitrate, meeting and conferring with Mata on the *Belaire* process, and agreeing to split the cost of a third party administrator to carry out the notice process.

Finally, as late as March 20, 2013, Regency Park stipulated that it would file an *answer* to the second amended complaint, making no mention of a motion to compel arbitration and certainly not reserving the right to file such a motion. And again on April 10, 2013, Regency Park sought another extension of time to respond to Mata's second set of discovery, with no mention of any intent to compel arbitration.

### 3. *Resulting Prejudice*

Regency Park contends the trial court erroneously concluded Mata suffered prejudice as a result of Regency Park's actions. "In California, whether or not litigation results in prejudice also is critical in waiver determinations." (*St. Agnes, supra*, 31 Cal.4th at p. 1203.) The combination of ongoing litigation and discovery with delay in seeking arbitration can result in prejudice. (*Hoover*, *supra*, 206 Cal.App.4th at p. 1206; see also *Fletcher Jones*, *supra*, 205 Cal.App.4th at pp.452-453 [finding prejudice where the defendant's actions filing multiple demurrers and refusing to extend deadlines, thereby forcing the plaintiff to file motions to compel, cause the plaintiff to incur $45,000 in attorney's fees and $1000 in costs].) Although a court will not find prejudice where a party arguing waiver "shows only that it incurred court costs and legal expenses[,]" a court can find prejudice where the same party shows that the other party's conduct has "substantially undermined" the ""strong public policy in favor of arbitration as a speedy

12

and relatively inexpensive means of dispute resolution."'" (*St. Agnes, supra,* at pp. 1203-1204.)

Mata has suffered prejudice in multiple ways. She repeatedly agreed to extend Regency Park's time to file responsive pleadings and respond to discovery. While such extensions may be a matter of professional courtesy in a complex class action, here they deprived Mata of the speedy and inexpensive resolution associated with arbitrating an individual employee claim. Regency Park acknowledged in its initial status conference statement that a motion to compel arbitration "must be filed in a timely manner" and stated its intention to file the motion within thirty days. Had it done so by January 19, 2013, Mata would not have been required to oppose the demurrer and could have waited to pursue compliance with the class discovery she served on December 31, 2012.

Regency Park's failure to timely seek arbitration also prejudiced Mata when she spent unnecessary time and effort seeking and responding to class discovery. Regency Park's delay in seeking arbitration had the added prejudicial effect of delaying its assertion that class wide arbitration is not contemplated under the arbitration agreement.

Regency Park does not refute that had it made its intent to demand arbitration known earlier, it is reasonable to infer that Mata would not have engaged in extensive class discovery without first resolving (a) whether the dispute must be resolved in arbitration and (b) whether class wide arbitration was permissible under the agreement. Instead, Regency Park simply relies on the general statement that it is entitled to participate in litigation before moving to compel arbitration. Both parties were aware of the arbitration agreement at the outset of this case, Regency Park knew that Mata would oppose a motion to compel arbitration, and they jointly agreed to proceed with class discovery. Had Regency Park filed its motion to compel arbitration by January 19, 2013, as it had represented to Mata and to the trial court, Mata would be aware of Regency Park's position that class arbitration is precluded under the agreement, and might have waited to have the issue resolved before propounding class discovery. The time and money spent on class discovery goes beyond regular litigation expenses. Mata suffered prejudice based on the time and resources expended meeting and conferring with

Regency Park on its objections to class discovery, and responding to Regency Park's own class discovery. Mata was further prejudiced when she drafted a proposed *Belaire* notice, which would be meaningless and unnecessary in the context of individual arbitration.

## C. Remaining Issues are Moot

Regency Park contends the trial court erred in finding the arbitration agreement is not governed by the FAA because Regency Park presented no evidence that the contract involved interstate commerce. It further contends that the arbitration agreement requires arbitration on an individual basis, rather than class wide arbitration.

"'[A]s a general rule it is not within the function of a court to act upon and decide a moot question or speculative, theoretical, or abstract question or proposition, or a purely academic question, or to give an advisory opinion on such a question or proposition . . .' '. . . although a case may originally present an existing controversy, if before decision it has, through act of the parties or other cause, occurring after the commencement of the action, lost that essential character, it becomes a moot case or question which will not be considered by the court. [Citations].'" (*Wilson v. L.A. County Civil Service Com.* (1952) 112 Cal.App.2d 450, 452-453.)

Both parties agree that the issue of waiver is controlled by state law, not federal law. Because we affirm the trial court's finding of waiver, issues of applicable law and whether class-wide arbitration is permissible under the agreement are moot and need not be addressed by this court.

14

**DISPOSITION**

The order denying Regency Park's motion to compel arbitration is affirmed. Costs on appeal are awarded to Mata.


KRIEGLER, J.


We concur:


MOSK, J., Acting P. J.


MINK, J.*

---

\*      Retired judge of the Los Angeles County Superior Court assigned by the Chief Justice pursuant to article VI, section 6 of the California Constitution.